## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SANDRA B.[1],
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:20-cv-960

Barrett, J.

Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

     Plaintiff Sandra B. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's application for disability insurance benefits (DIB).  This matter is before the

Court on plaintiff's statement of errors (Doc. 12), the Commissioner's response in opposition

(Doc. 15), and plaintiff's reply (Doc. 16).

## I.  Procedural Background

     Plaintiff originally filed an application for DIB in August 2012, for which she was

granted a closed period of disability benefits from June 2011 to January 2013.  Plaintiff returned

to work but stopped working in 2017 due to pain in her neck and right arm.  (Tr. 25).  Plaintiff

again filed an application for DIB in January 2018, alleging disability since January 27, 2017,

due to numbness and tingling in her arms, neck and hands from a 1994 work injury; degenerative

disc disease; pinched nerves in her neck; a history of spinal disc fusion; and depression.  (Tr.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

229). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Lloyd E. Hubler, III. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing on November 18, 2019. On December 19, 2019, the ALJ issued a decision denying plaintiff's DIB application. This decision became the final decision of the Commissioner when the Appeals Council denied review.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2022.

2. The [plaintiff] has not engaged in substantial gainful activity since January 27, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The [plaintiff] has the following severe impairments: cervical degenerative disc disease, bilateral carpal tunnel syndrome, obesity (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps stair but never climb ladders, ropes, or scaffolds.  She can frequently crawl.  She can occasionally reach overhead with the bilateral upper extremities.  She can frequently handle and finger with the bilateral upper extremities.  She cannot work around hazardous moving machinery or at unprotected heights.

6. The [plaintiff] is capable of performing past relevant work as a receptionist (DOT 237.367-038, sedentary, SVP 4), data entry clerk (DOT 203.582-054, sedentary, SVP 4), and administrative clerk (DOT 219.362-010, light, SVP 4, performed at up to medium).  This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 27, 2017, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 20-29).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D. Relevant Medical Evidence and Opinions

*1. Paradigm Pain & Spine Consultants - Robert J. Klickovich, M.D. and Grace Mullins, ARNP*

Plaintiff treated with Dr. Klickovich and Ms. Mullins prior to the alleged onset date in November 2014. (Tr. 574). When seen for follow-up in January 2017, plaintiff rated her pain severity at a level 8 on a 0-10 visual analog pain scale. She felt like her neck was sore at the base and had a deep aching sensation in her cervical and upper back region. (Tr. 655). On examination, plaintiff exhibited cervical facet tenderness with a reduced range of motion; positive Spurling test on the right and left; occipital and trap tenderness; and sensitivity to light touch over the upper back/neck. Plaintiff was assessed with displacement of cervical intervertebral disc without myelopathy, and she was treated with the medications Ambien and Norco. (Tr. 655-56).

Plaintiff underwent cervical medial branch block injections in March 2017. (Tr. 664-70). The following month she reported 80% pain relief which lasted for three weeks. (Tr. 677). She

also noted that the injection helped both her arm and neck pain. Ms. Mullins reported that plaintiff's examination was unchanged and continued her medications. (Tr. 677-78).

When seen for a follow-up appointment in May 2017, plaintiff described her pain "as a constant ache" with intermittent numbness in her upper extremity. She reported her pain intensified with prolonged driving and looking down. She used heat and cool compresses to manage her pain. (Tr. 699). On May 26, 2017, plaintiff underwent a right side cervical radiofrequency neuro ablation. (Tr. 702-03). On June 9, 2017, she had a left side cervical radiofrequency ablation. She reported 100% relief and decreased symptoms on her right side for the first week. (Tr. 705). When examined on June 16, 2017, Ms. Mullins again noted cervical facet tenderness with range of motion. (Tr. 708). By August 2017, plaintiff reported her pain was a seven out of ten and was relieved with ice, medication, heat, and soaking. (Tr. 719-20).

She received another cervical steroid injection at C5-6 in September 2017. (Tr. 726-27). She reported that the injection provided 50-60% pain relief for about one week. Plaintiff rated her pain at a nine to ten out of ten. Ms. Mullins noted that plaintiff had failed over three months of conservative treatment. She ordered an MRI, and plaintiff was to start physical therapy. (Tr. 728-29).

Plaintiff underwent a cervical spine MRI in November 2017. The MRI revealed disc protrusion at C3-4, degeneration, and left foraminal stenosis; left C4 root effacement; possible C5-6 anterior stabilization without bony bridging; spondylosis; broad disc protrusion; and mild foraminal stenosis. The findings appeared stable. The MRI also revealed status post C6-7 anterior decompression and stabilization without bony bridging; anterior plate fixation; Luschka

joint hypertrophy; and mild to moderate foraminal stenosis. Again, the findings appeared stable. The MRI also showed straightening of the cervical lordosis, which appeared stable, and facet arthropathy most conspicuous at C3-4 on the left and on the right at C2-3. (Tr. 751).

In November, plaintiff continued to report that medication helped her function, specifically as to her daily activities. She also noted that ointment soothed her pain. (Tr. 753). Her examination was unchanged, and she had plans to go out of town for the holidays. (Tr. 753-54).

On February 9, 2018, plaintiff underwent a transforaminal epidural steroid injection at right C5-6. (Tr. 771). On February 23, 2018, plaintiff underwent an epidural injection on her left side and reported greater than 75% relief from her right-sided injection earlier that month. (Tr. 773). An examination in March 2018 revealed moderate cervical spine, paraspinal, facet, and axial tenderness. (Tr. 775-76). By May 2018, Ms. Mullins found plaintiff's examination was unchanged. (Tr. 784-85).

### 2. *John B. Jacquemin, M.D.*

Plaintiff consulted with an orthopedist, John B. Jacquemin, M.D., to review her MRI in December 2017. (Tr. 563-65). On examination, Dr. Jacquemin found decreased range of motion of plaintiff's neck, full motor function in the arms and legs, and full range of motion of all major joints with no complaints of pain. (Tr. 564). Dr. Jacquemin recommended a CT scan of the neck as well as an EMG to better evaluate her healing. (*Id.*).

In December 2017, a CT scan showed severe degenerative changes and mild to moderate facet arthropathy but "no acute abnormality" of the neck overall. (Tr. 787). Plaintiff returned to

Dr. Jacquemin in January 2018. Plaintiff exhibited head and neck pain with range of motion but a negative Spurling sign. Examination of plaintiff's arms and legs was normal with full motor function and range of motion except for positive Tinel sign at the elbows. (Tr. 561). Dr. Jacquemin recommended that plaintiff continue with conservative measures. (Tr. 562).

When seen by Dr. Jacquemin in May 2018, he noted that plaintiff continued to have decreased range of motion of the neck but a negative Spurling sign and normal examination of the arms and legs. (Tr. 559-60). Dr. Jacquemin indicated that surgery was not recommended for her neck pain. He also recommended an EMG based on plaintiff's complaints of numbness in her arms and positive Phalen's and Tinel's sign. (Tr. 560). A June 2018 EMG showed compression over the median nerves at the wrists, left worse than right. There was no evidence of cervical radiculopathy. (Tr. 567-68).

### 3. Richard E. Sexton, Ph.D.

Plaintiff was examined by Richard E. Sexton, Ph.D., for disability purposes in March 2018. (Tr. 493-99). Plaintiff described her mental status as "anxious, moody, and depressed." (Tr. 498). Plaintiff reported no history of mental health treatment except for an anti-depressant prescribed by her primary care provider, which she indicated helps her symptoms. (Tr. 497). She described her daily activities as follows: "I get up and dressed, I eat, and I do chores. I read. I watch TV or listen to music. I don't go out very much. I eat, watch TV, and I sleep." (Tr. 495). On mental status examination, plaintiff's mood was noted to be depressed and anxious with a slight impairment in attention span, but she demonstrated no difficulty with hypothetical problem-solving and judgment. Her posture was noted to be good, and the flow of conversation

8

was normal. (Tr. 496-97). Dr. Sexton assessed an unspecified depressive disorder and estimated plaintiff's intelligence as average. (*Id.*). Dr. Sexton opined that plaintiff was expected to be able to understand and apply instructions in the work setting consistent with average intellectual functioning. He also opined that although plaintiff may experience a subjective sense of reduced effectiveness in concentration when depressive symptoms increase, he did not expect objective changes in a level prompting performance concerns by others. He found no limitations in plaintiff's ability to conform to social expectations in a work setting. He also believed that plaintiff could respond appropriately to work place pressures. (Tr. 498-99).

### 4. Martin Fritzhand, M.D.

Plaintiff was examined by Martin Fritzhand, M.D., in May 2018 for disability purposes. (Tr. 547-54). Plaintiff reported that she originally injured her neck in 1994 and had a C4-6 fusion. She complained of constant sharp neck pain radiating to the shoulders and arms. Plaintiff also reported that rapid head movements and prolonged use of the arms, reaching or lifting heavy objects exacerbated her pain. (Tr. 548). Upon examination, she was comfortable both in the sitting and supine position. Mental status and intellectual functioning were found to be normal. Plaintiff exhibited some reduced range of motion of the neck. The remainder of her examination findings were otherwise normal. (*Id.*). Muscle strength was well preserved in the arms with grasp strength graded at 4/5. (Tr. 548, 550-53). Cervical spine x-rays taken as part of this evaluation showed evidence of previous C4-7 fusion, as well as degenerative facet disease at C2-3 and C3-4. (Tr. 554). Dr. Fritzhand concluded that plaintiff appeared capable of performing a mild to some moderate amount of sitting, ambulating, standing, bending, pushing,

9

pulling, lifting and carrying heavy objects.  Dr. Fritzhand also opined that plaintiff had no difficulty reaching, grasp strength was slightly diminished, and manipulative ability was well-preserved.  (Tr. 549).

### 5.  Joan E. Simpson, Psy.D.

Plaintiff treated with Joan E. Simpson, Psy.D., from July 2018 to October 2019 for counseling as part of her workers' compensation claim.  Plaintiff reported to Dr. Simpson that she suffers from chronic pain with poor sleep, poor concentration, poor memory, worry, tearfulness, and sad mood since 1995.  (Tr. 1175).  Dr. Simpson reported that plaintiff "was unadvised to return to work."  (*Id.*).  She stated that plaintiff's mental health symptoms would likely limit her interactions with co-workers, increase absenteeism, and decrease her ability to sustain focused attention long enough to complete tasks commonly found in workplace.  (Tr. 1175-1201).

### 6.  Ryan Schmidtz, M.D.

Plaintiff treated with psychiatrist, Ryan Schmidtz, M.D., in May, July, and August 2019. (Tr. 1210-21).  On mental status examinations, he found plaintiff exhibited "exhausted" mood, mildly dysphoric affect with fair reactivity, and intact memory, attention, and concentration. (*Id.*).  Dr. Schmidtz diagnosed dysthymic disorder and prescribed psychotropic medications.  (Tr. 1211-12).

### 7.  State Agency Review

In May 2018, state agency physician Diane Manos, M.D., reviewed plaintiff's file and found that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand,

walk and/or sit for about 6 hours in an 8-hour workday; occasionally reach overhead; and frequently handle and finger bilaterally. (Tr. 102-04). Plaintiff was limited to frequent crawling and no climbing of ladders, ropes, or scaffolding. (Tr. 103). Plaintiff was also to avoid all exposure to unprotected heights or hazards. (Tr. 104). Elizabeth Das, M.D., reviewed plaintiff's file upon reconsideration in August 2018 and affirmed Dr. Manos' assessment. (Tr. 119-22).

State agency psychologists Robert Baker, Ph.D., and Karla Delcour, Ph.D., reviewed plaintiff's file in April and July 2018, respectively. Both opined that plaintiff only had mild limitations in concentration, persistence, or pace and no other limitations from a mental standpoint. (Tr. 100, 117).

### E. Specific Errors

On appeal, plaintiff contends: (1) the ALJ erred by finding the "nervous impairments" in combination to be non-severe; (2) the ALJ erred in his analysis of plaintiff's subjective complaints and by failing to consider under 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p the different methods plaintiff uses to cope with her pain; (3) the ALJ erred in her evaluation of the opinion of treating psychologist Dr. Simpson; and (4) the ALJ posed improper hypothetical questions to the vocational expert. (Docs. 12 and 16).

### 1. The ALJ's severity findings and assessment of Dr. Simpson's opinion (first and third assignments of error)

As they are related, the Court considers assignments of error one and three together. Plaintiff contends the ALJ erred by finding that her "nervous impairments," which plaintiff identifies as depression and chronic pain, were not severe impairments in combination. (Doc. 12 at PAGEID 1292). Plaintiff argues these impairments affect her memory and concentration and

11

would prevent her from performing her past relevant work.  Plaintiff alleges the state agency psychologists did not have the benefit of the treating doctors' treatment notes because Drs. Simpson and Schmidtz evaluated plaintiff after the state agency psychologists rendered their opinions.  Plaintiff states that Dr. Simpson documented chronic pain throughout her treatment of plaintiff.  (*Id.*, citing Tr. 1175, 1180, 1182, 1183, 1186, 1190, 1194, 1197, 1201, and 1216).  Plaintiff also cites to Dr. Schmidtz's records, which indicate a GAF[2] of 50 and 59 in May and August 2019, respectively, which indicate a severe mental impairment.  (*Id.*, citing Tr. 1212, 1220).  Plaintiff contends the combination of these impairments, which cause problems with concentration, memory, and dealing with others, are severe impairments that would preclude performance of her past semi-skilled work.  Plaintiff also argues the ALJ erred in considering Dr. Simpson's opinion and not giving her "the most weight under 20 C.F.R. § 404.1520c and Social Security Ruling 96-2p."  (*Id.* at PAGEID 1295-96).

The regulations define a severe mental impairment as one that significantly limits the mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Plaintiff is not required to establish total disability at this level of the sequential evaluation process.  Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act.  *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984).  An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience."  *Farris v.*

---

[2] A GAF score represents a clinician's assessment of an individual's overall level of functioning on a scale of 0-100. Diagnostic & Statistical Manual of Mental Disorders, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV").

*Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ finds that the claimant "has at least one other severe impairment and continues with the remaining steps of the disability evaluation." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "This rule is predicated on the notion that the ALJ 'properly could consider [the] claimant's [non-severe impairments] in determining whether [the] claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity." *Id.* (quoting *Maziarz*, 837 F.2d at 244). The Court must consider whether the ALJ "'consider[ed] limitations and restrictions imposed by all of [the claimant]'s impairments,' including h[er] non-severe impairments, in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5). In other words, where the ALJ considers the "non-severe" impairments when determining the claimant's RFC, "'it is unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two." *Fisk*, 253 F. App'x at 584 (citing *Maziarz*, 837 F.2d at 244).

As an initial matter, neither Dr. Simpson nor Dr. Schmidtz diagnosed plaintiff with the mental impairment of chronic pain disorder. Rather, chronic pain was one of the symptoms plaintiff exhibited during her treatment with Dr. Simpson. Symptoms of chronic pain do not

constitute a medically determinable impairment that the ALJ was required to assess at Step Two of the sequential evaluation process.

At Step Two, the ALJ must consider whether plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Importantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). *See also Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 559 (6th Cir. 2014) ("A severe mental impairment is established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.") (internal quotation marks and citation omitted). As the chronic pain alleged by plaintiff is a symptom she consistently reported to Dr. Simpson, the ALJ did not err in failing to determine whether plaintiff's "chronic pain" was a severe mental impairment. Rather, the ALJ appropriately considered plaintiff's pain allegations in evaluating her subjective statements about her symptoms, as explained below.

Plaintiff also takes issue with the ALJ's finding that plaintiff's depression was not severe. The ALJ determined that plaintiff's medically determinable mental impairment of depression did not cause more than minimal limitation in plaintiff's ability to perform basic work activities. (Tr. 21). The ALJ's finding is supported by substantial evidence.

14

The ALJ acknowledged that a few months prior to plaintiff's alleged onset date, she exhibited a depressed mood, but her speech, behavior, judgment, thought content, cognition, and memory were normal.  (Tr. 21, citing Tr. 372).  She was diagnosed with a depressive disorder, not elsewhere classified, and prescribed Zoloft, Effexor, and Ambien.  (*Id.*).

The ALJ next considered Dr. Sexton's March 2018 consultative examination, at which plaintiff reported she was "anxious, moody, and depressed."  (Tr. 21, citing Tr. 493-99).  Her mood on examination was depressed and anxious with a slight impairment in attention span, but she demonstrated no difficulty with hypothetical problem-solving and judgement.  (Tr. 496-97).  Dr. Sexton noted no history of mental health treatment, with the exception of an anti-depressant prescribed by her primary care provider.  (Tr. 497).  Dr. Sexton diagnosed an unspecified depressive disorder and estimated plaintiff's intelligence as average.  (Tr. 496-97).  Based on Dr. Sexton's report, the state agency reviewing psychologists concluded that plaintiff's depression was non-severe because it caused only mild limitation in concentration, persistence, or pace.  (Tr. 23, citing Tr. 100, 117).

The ALJ noted that plaintiff treated with psychologist Dr. Simpson from July 2018 to October 2019 and that plaintiff presented with symptoms of depression, chronic pain, poor sleep, decreased mobility, poor concentration and memory, worrying, tearfulness, and a sad mood.  (Tr. 21, citing Tr. 1175).  The ALJ considered notes showing mild improvement in sleep, suicidal ideation at times, with no plan or intent, and monthly sessions with Dr. Simpson.  (Tr. 21, citing Tr. 1179, 1182; Tr. 1175 to 1201).  In the initial mental health summary note and those thereafter, Dr. Simpson opined on plaintiff's functional status:

> Ms. B[] is unadvised to return to work. Her current symptoms of poor sleep secondary to pain, poor memory, poor concentration, chronic pain, disrupted mobility, worry thoughts and sad mood would likely limit her interactions with coworkers, increase absenteeism, [and] decrease her ability to sustain focused attention long enough to complete tasks commonly found in workplace.

(Tr. 1175-1179). Dr. Simpson's remaining notes recount an identical functional status with the addition of the sentence: "Ms. B[] is interested in returning to work." (Tr. 1180-1200). In the final October 9, 2019 note, Dr. Simpson also opined that "Vocational Rehabilitation at this time is unadvised." (Tr. 1201).

The ALJ also reviewed plaintiff's mental health treatment in May, July and August 2019 with psychiatrist Dr. Schmidtz. (Tr. 1210-21). On mental status examinations, Dr. Schmidtz found plaintiff had a mildly dysphoric affect with fair reactivity; her mood was "exhausted" on her initial visit, then "OK" on her second and third visits; and thought process, thought content, and perceptions were normal. (*Id.*). Dr. Schmidtz also reported that plaintiff's attention, concentration, and memory were intact. (Tr. 1212, 1216, 1220). Dr. Schmidtz assess dysthymic disorder and prescribed psychotropic medications. (Tr. 1213, 1217, 1221).[3]

The ALJ further noted that many of plaintiff's other examinations showed she had a normal mood and affect and intact recent and remote memory. (Tr. 21, citing Tr. 366 (3/17/17);

---

[3] Although plaintiff argues the GAF scores of 50 and 59 assessed by Dr. Schmidtz indicated her mental impairment was severe, the ALJ was not obligated to assign any evidentiary value to these GAF scores. The Commissioner has "declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 691-92 n.5 (11th Cir. 2005)) (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006). Moreover, an update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Carter v. Berryhill*, No. 1:16-cv-01840, 2017 WL 2544064, at *2 n.4 (N.D. Ohio May 26, 2017) (Report and Recommendation), *adopted*, 2017 WL 2537066 (N.D. Ohio June 12, 2017) (citing DSM V at 16) (American Psychiatric Ass'n, 5th ed., 2013)).

Tr. 655 (1/26/17), Tr. 659 (2/15/17), Tr. 678 (4/20/17), Tr. 708-09 (6/16/17), Tr. 720 (8/14/17), Tr.

729 (10/13/17), Tr. 776 (3/9/18), Tr. 1102 (9/12/18), Tr. 1051 (9/9/19-on review of symptoms:

negative for depression, not nervous/anxious and does not have insomnia; on examination: normal

mood and affect)).

Finally, the ALJ considered the "paragraph B" criteria for evaluating the severity of

plaintiff's mental functioning and assessed only mild limitation in concentration, persistence, and

pace, and no limitations in the other functional areas.  (Tr. 22).

As noted in the ALJ's decision, there is conflicting evidence on plaintiff's mental status

examinations.  Dr. Simpson's reported findings stand in contrast with the other findings of record.  In

addition, Dr. Schmidtz found that plaintiff had a mildly dysphoric affect with fair reactivity and,

contrary to Dr. Simpson's report, plaintiff's attention, concentration, and memory were intact.

(Tr. 1212, 1216, 1220).  In light of this conflicting evidence, the Court finds no error in the

ALJ's assessment that plaintiff does not suffer from a severe mental impairment.  It is the ALJ's

duty, not the Court's, to resolve conflicts in the medical evidence, and the Court must uphold the

ALJ's decision if it is supported by substantial evidence, even where there is substantial evidence

to support the opposite conclusion or a reviewing court would resolve the issues of fact

differently.  *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398 (6th Cir. 2016) (citing

*Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th

Cir. 1993)).  The ALJ's finding that plaintiff's depression is not severe is supported by

substantial evidence.

In any event, even if the ALJ erred in this regard, any such error would be harmless

because the ALJ found plaintiff had severe impairments of cervical degenerative disc disease,

bilateral carpal tunnel syndrome, and obesity, and continued with the remaining steps of the sequential evaluation process. *Winn*, 615 F. App'x at 326. The ALJ considered the opinion evidence of all the psychologists of record and reasonably determined that plaintiff's mental impairment did not warrant additional functional restrictions. (Tr. 23).

The ALJ correctly applied the new regulations for evaluating medical opinion evidence as plaintiff filed her DIB claim after March 27, 2017. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[4] *Id.* Under the new regulations, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[5], including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c(b).

---

[4] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

In determining the persuasiveness of a medical opinion, the ALJ considers five factors:

(1) supportability, (2) consistency, (3) relationship with the claimant, including length of

treatment relationship, frequency of examinations, purpose of the treatment relationship, and

examining relationship, (4) specialization, and (5) other factors that tend to support or contradict

a medical opinion.  20 C.F.R. § 416.920c(c)(1)-(5).  The most important factors the ALJ must

consider are supportability and consistency.  20 C.F.R. § 416.920c(b)(2).  With respect to the

supportability factor, "[t]he more relevant the objective medical evidence[6] and supporting

explanations presented by a medical source are to support his or her medical opinion(s) . . . the

more persuasive the medical opinions . . . will be."  20 C.F.R. § 416.920c(c)(1).  Similarly, "[t]he

more consistent a medical opinion(s) . . . is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ."  20 C.F.R. §

416.920c(c)(2).  The ALJ is required to "*explain* how [he/she] considered the supportability and

consistency factors for a medical source's medical opinions" in the written decision.  20 C.F.R. §

416.920c(b)(2) (emphasis added).  Conversely, the ALJ "may, but [is] not required to, explain"

how he/she considered the relationship, specialization, and other factors set forth in paragraphs

(c)(3) through (c)(5) of the regulation.  *Id.*  However, where two or more medical opinions or

prior administrative findings about the same issue are equally persuasive, the ALJ must articulate

how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). .

. ."  20 C.F.R. § 404.1520c(b)(3).  Finally, the ALJ is not required to articulate how he or she

considered evidence from nonmedical sources.  20 C.F.R. § 404.1520c(d).

---

[6] Objective medical evidence is defined as "signs, laboratory findings, or both."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

To the extent plaintiff contends the ALJ erred under SSR 96-2p by not giving the most weight to Dr. Simpson's opinion that plaintiff should not return to work (Doc. 12 at PAGEID 1292), plaintiff's argument is not well-taken.  Plaintiff's argument is premised on a Social Security Ruling that has been rescinded[7] and on the weighing of opinion evidence, which are no longer applicable in Social Security appeals.

The ALJ's evaluation of the opinion evidence of record is supported by substantial evidence.  The ALJ reasonably determined that the opinions of Drs. Sexton, Delcour and Baker were persuasive as they are well supported and consistent with the evidence.  Plaintiff contends that in assessing the opinion evidence of Dr. Simpson, the ALJ erred when he "claimed normal results on exams, and this is incorrect" because Dr. Simpson's records consistently showed "poor concentration and memory, chronic pain, and sad mood."  (Doc. 12 at PAGEID 1295).

Plaintiff misreads the ALJ's decision.  In evaluating Dr. Simpson's opinion, the ALJ stated:

> Treatment provider Joan Simpson, Psy.D., stated the claimant is unadvised to return to work.  She stated the claimant's mental health symptoms would likely limit her interactions with coworkers, increase absenteeism, decrease her ability to sustain focused attention long enough to complete tasks commonly found in workplace (B23F).  This opinion was not persuasive because it is inconsistent with other evidence.  While the claimant exhibited a dysphoric affect and reported problems with mental health during counseling (B23F, B25F), many other exams noted the claimant had a normal mood and affect (see B3F/6, B9F/90, 94, 164, 211, B14F/48, B18F/9).
>
> At her consultative exam, her memory appeared adequate and she was assessed with average intelligence.  She established a workable relationship with the examiner, and was cooperative with procedures presented to her.  The claimant could perform serial 3s.  There was no impaired level of consciousness with slight

---

[7] Social Security Rulings 96-2p was rescinded effective March 27, 2017.  *See* 82 Fed. Reg. 15263-64 (March 27, 2017).

impairment in attention span (B5F). In addition, the limitations in this opinion are vague and not in specific vocational terms.

(Tr. 23-24).

The ALJ acknowledged that plaintiff presented with a dysphoric affect and other problems during counseling with Dr. Simpson, but contrasted these findings with other record evidence showing normal mood and affect. As the ALJ reasonably noted, four months before plaintiff began counseling with Dr. Simpson, her consultative examination with Dr. Sexton revealed adequate memory, the ability to perform serial 3s, and only slight impairment in attention span. (Tr. 496-97, 499). Moreover, as the ALJ noted, Dr. Schmidtz's mental status exams showed only mildly dysphoric affect and intact attention, concentration, and memory. Plaintiff contends that Dr. Simpson's treatment and records were submitted after reconsideration, and the state agency psychologists did not have the benefit of these records. However, Dr. Schmidtz, whose treatment of plaintiff overlapped that of Dr. Simpson, did not find the memory and concentration issues reported by Dr. Simpson. In addition, other records cited by the ALJ show normal mood and affect, some of which post-date the state agency reviewers' opinions. This evidence, in conjunction with Dr. Schmidtz's records, substantially support the ALJ's assessment of Dr. Simpson's opinion in this matter.

Therefore, plaintiff's first and third assignments of error should be overruled.

### 2. The ALJ's assessment of plaintiff's subjective complaints (second and fourth assignments of error)

In her second and fourth assignments of error, plaintiff alleges that the ALJ's assessment of plaintiff's subjective complaints of pain and physical limitations are not supported by

substantial evidence. (Doc. 12 at PAGEID 1294-95, 1296-98). First, plaintiff alleges that the ALJ failed to consider plaintiff's use of pillows, heat, and ice to help alleviate her pain under Title 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, 2016 WL 1119029. Plaintiff contends this error is significant and cites to the testimony of the VE indicating there would be no available jobs if plaintiff needed to use pillows under her arms for four to six hours during the workday. (Tr. 70). The VE also testified that if plaintiff was unable to look down, she would be unable to perform her past relevant work. (Tr. 73).

Title 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, 2016 WL 1119029, *3 (March 16, 2016) describe a two-part process for evaluating an individual's subjective statements about symptoms, including pain.[8] First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3). The ALJ's

---

[8]SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

assessment of a claimant's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). The ALJ's explanation of his decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

The ALJ acknowledged plaintiff's testimony that she used pillows for symptom relief (Tr. 25) and thoroughly questioned plaintiff about her use of pillows during the administrative hearing. (Tr. 71-73). The ALJ did not fail to evaluate this evidence, as plaintiff argues.[9] Rather, similar to plaintiff's other allegations of pain and limitations, the ALJ found such allegations were not entirely consistent with the medical and other evidence of record. (Tr. 25). The ALJ's decision in this regard is supported by substantial evidence.

The ALJ thoroughly reviewed the objective medical evidence, noting that plaintiff at times exhibited abnormal diagnostic and clinical findings but entirely normal findings on other examinations. (Tr. 25-27). The ALJ reviewed plaintiff's various modes of treatment, including epidural injections, physical therapy, prescription medication, medial branch blocks, and cervical radiofrequency neuro ablations. (*Id.*). The ALJ also considered plaintiff's daily activities, including her ability to drive, do chores (make her bed, wash dishes, dust, and sweep a little bit), read, watch television, and engage in hobbies such as painting and coloring. (Tr. 22, 25, 27-28,

---

[9] To the extent the ALJ's decision did not specifically address plaintiff's use of heat and ice in treating her pain, "an ALJ's failure to cite specific evidence does not indicate it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (citing *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). "[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted).

40, 57-58, 63-64, 495).  He further considered plaintiff's reports of ongoing pain and symptom improvement from treatment modalities.  (Tr. 26-27).  The ALJ summarized his conclusions as follows:

> Based on these varying, though sometimes normal, physical exam findings, as well as the claimant's reports of daily activities, her limitations are not quite as severe or persistent as alleged.  Pain management records noted many abnormalities but each exam revealed almost identical findings.  On the other hand, other exams also showed abnormalities but they were not as severe and at times she had normal physical exams.  For example, in March 2017, the claimant had a normal musculoskeletal range of motion with no edema or tenderness (B3F/6).  But then, April and May pain management records noted a reduced cervical spine range of motion with facet tenderness (B9F/112, 134).  The claimant's abnormal medical imaging was also considered (B6F/38, B8F8, B9F/222).  The claimant also reported being able to perform household chores and drive, though she reported some limitations with these activities (testimony).  Any remaining limitations were sufficiently addressed by limiting the claimant to light work with postural, manipulative, and environmental limitations.

(Tr. 27-28).

Plaintiff contends her subjective complaints of pain are supported by the EMG findings and treatment records showing she consistently rated her pain at 7 or 8.  She also cites to examination findings showing restricted motion of the neck, tenderness, and positive Spurling signs on the left and right to support her subjective complaints.  (Doc. 12 at PAGEID 1296-97).  As explained above, however, the ALJ discussed and considered these findings and contrasted them with evidence showing normal findings and plaintiff's daily activities.  (Tr. 25-28).  Notably, the ALJ recognized that plaintiff exhibited some of these same abnormal findings at her pain management clinic at a time when she was still working.  (Tr. 25).  The ALJ did not ignore

24

any of this evidence and reasonably analyzed it in light of the contrary normal findings and admitted daily activities he cited.  (Tr. 25-28).[10]

Plaintiff does not address the specific reasons given by the ALJ in evaluating plaintiff's subjective complaints, nor has she made any attempt to explain why those reasons are not supported by substantial evidence.  Instead, she cites to her pain level, EMG study, and positive physical findings to support her subjective complaints.  (Doc. 12 at PAGEID 1296-97). However, even where substantial evidence could support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence.  *See Ulman v. Comm'r of Soc. Sec*., 693 F.3d 709, 714 (6th Cir. 2012); *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999).  Though there is some medical evidence that could support her allegations of pain and limitations, plaintiff's statement of errors includes no explanation why the reasons actually articulated by the ALJ are not substantially supported.  Plaintiff has not carried her burden to show that the evidence cited by the ALJ does not substantially support his decision.  Plaintiff's second and fourth assignments of error should be overruled.

### 3.  The vocational evidence (fifth assignment of error)

In her fifth assignment of error, plaintiff alleges the ALJ erred by posing improper hypothetical questions to the VE.  Plaintiff contends the ALJ omitted limitations relating to her "nervous impairments"; her worsening pain; and her need to sit with pillows under her arms and on her neck.  (Doc. 12 at PAGEID 1298).

---

[10] Nor did the ALJ ignore plaintiff's lack of insurance for carpal tunnel syndrome treatment as plaintiff argues (Doc. 12 at PAGEID 1297), but explicitly acknowledged plaintiff's testimony on this point.  (Tr. 25).

"It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993). *See also Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("[T]he ALJ is only required to incorporate, as part of that examination [of the VE], evidence that is deemed credible."). As explained above, the ALJ's decision finding plaintiff did not have a severe mental impairment is supported by substantial evidence. In addition, the ALJ's evaluation of plaintiff's subjective complaints of pain and limitations is likewise substantially supported by the record. Therefore, the ALJ was not required to include any alleged limitations from plaintiff's mental impairment or based on plaintiff's subjective allegations. Plaintiff's fifth assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's statement of errors (Doc. 12) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 2/14/2022

Karen L. Litkovitz
Chief United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SANDRA B.,                                          Case No. 1:20-cv-960
      Plaintiff,                              Barrett, J.
                                                   Litkovitz, M.J.
     vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).